# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 09-40022-01/02-JAR |
| ) | |
| **LUIS BELTRAN-PALAFOX, and** ) | |
| **RAYMUNDO ELENES-MOMBELA** ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on defendant Raymundo Elenes-Mombela's Motion for Bill of Particulars (Doc. 35), and defendant Luis Beltran-Palafox's Motion to Compel Discovery Regarding Informants (Doc. 36). Both defendants have moved to join in the other's motion (Docs. 37, 41).

The Court has determined that a full evidentiary hearing is necessary to resolve defendants' motions to suppress (Docs. 33, 38, 39), which are pending before this Court. After a status conference on January 6, 2010, the Court set the evidentiary hearing for March 29, 2010. The Court, however, has determined that it is prepared to rule on the parties' discovery motions without additional evidence. The facts discussed below are synthesized from the parties' pretrial motions. For purposes of this Order, the Court has only considered those facts that are relevant to the defendants' discovery requests. The Court notes, however, that additional evidence provided at the evidentiary hearing will be considered in resolving defendants' motions to suppress.

Defendants' discovery motions are fully briefed. The Court has reviewed the parties'

briefs, and for the reasons stated below, the Court denies defendants' motion for bill of particulars and motion to compel discovery regarding informants.

**I.     Background**

On December 15, 2008, officers of the Saline County Police Department were conducting surveillance at a residence in Saline County, Kansas in relation to an ongoing narcotics investigation. During the surveillance, police officers noticed a 1991 Lincoln Town Car, parked in the driveway of the residence, which was allegedly occupied by three individuals, later identified as defendants Luis Beltran-Palafox and Raymundo Elenes-Mombela, and an individual named Garrett Greer.

During the surveillance, police officers allegedly saw Beltran-Palafox and Elenes-Mombela entering and exiting the residence, returning to the Lincoln Town Car, and placing unknown items inside the vehicle. Although none of the three individuals was seen holding a firearm, officers reported that, at one point during the surveillance, they heard automatic gunfire from the property. Approximately one hour later, officers observed Beltran-Palafox and Elenes-Mombela enter the Lincoln Town Car and drive away. The officer decided to follow.

At that time, Officer R. Garcia[1] was on patrol in the Saline County area. Officers contacted Officer Garcia and gave him a description of the vehicle and its general location, told him that the car was registered to "Luis Beltran," and noted that the men could be armed.

Shortly thereafter, Officer Garcia spotted the Lincoln Town Car and, believing the

---

[1] Officer Garcia's full name was never provided to the Court.

window tinting to be darker than permitted under Kansas law,[2] activated his lights and stopped the vehicle. Officer Garcia approached the driver's side window and informed the driver, Beltran-Palafox, of the purpose of the stop and asked for his driver's license and proof of insurance. Beltran-Palafox produced a Mexican driver's license with the name "Oscar Daniel Villa-Hurtado."

Officer Garcia returned to his patrol car to check the license and run a check for any warrants. He also called for a canine unit to assist him at the stop location. After running various checks on the name "Oscar Daniel Villa-Hurtado," dispatch was apparently unable to locate a Kansas driver's license and found no outstanding warrants for the name provided. Officer Garcia approached Beltran-Palafox once again to check the tint on the driver's side window and ask a few more questions. Officer Garcia informed Beltran-Palafox that dispatch was unable to find a valid driver's license under the name provided. Officer Garcia asked the passenger, Elenes-Mombela, for identification. Elenes-Mombela gave Officer Garcia a Mexican identification card.

Officer Garcia returned to his vehicle and spoke with Lt. Norton, who advised that Beltran-Palafox should be placed under arrest for failing to possess a valid driver's license. While Officer Garcia was in the patrol car, he asked dispatch to do a check on Elenes-Mombela's identification. At some point during the traffic stop, Canine Officer Deputy Jim Hughes arrived on the scene with his drug dog. After Officer Hughes arrived, Officer Garcia

---

[2] Kansas statute annotated section 8-1749a(a)(3) provides that "No motor vehicle required to be registered in this state and which is operated on the highways of this state shall be equipped with one-way glass or any sun screen device, . . . and used in conjunction with safety glazing materials that do not meet the following requirements: . . . (3) the total light transmission shall not be less than 35% when a sun screening device is used in conjunction with safety glazing materials or other existing sun screening devices." Subsection (e)(1) states that "after July 1, 1987," a law enforcement officer "shall issue a warning citation to any person violating the provisions of this section."

approached the driver's door and arrested Beltran-Palafox. After placing Beltran-Palafox in the patrol car, Officer Garcia approached Elenes-Mombela and asked him to step out of the vehicle while the canine performed a drug sniff. After circling the vehicle multiple times, the drug dog allegedly alerted to the scent of drugs. The vehicle was transported to the Salina Police Department to be searched, producing 55.20 grams of methamphetamine hidden in the panel of the driver's side door, a firearm, digital scales, and other items.

On March 26, 2009, defendants Luis Beltran-Palafox and Raymundo Elenes-Mombela were indicted (Doc. 1). On April 15, 2009, a First Superseding Indictment was issued (Doc. 15), charging both defendants with possession, with intent to distribute, 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), which occurred on or about December 15, 2008. Luis Beltran-Palafox was indicted on a second count for intentionally carrying a firearm on December 15, 2008, to wit: a Ruger SR9, 9 mm, semi-automatic handgun, bearing Serial No. 330-04654, in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). In its response (Doc. 43), the government clarified that defendants were charged with possession with intent to distribute 55.20 grams of methamphetamine.

**II.     Standards**

    *A.     Bill of Particulars*

The district court has broad discretion in deciding a motion for bill of particulars.[3] "'The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to

---

[3]*United States v. Shepard*, 188 F.R.D. 605, 609 (D. Kan. 1999) (citing *United States v. Edmonson*, 962 F.2d 1535, 1541 (10th Cir. 1992)).

enable him to plead double jeopardy in the event of a later prosecution for the same offense.'"[4] The sufficiency of an indictment is generally held to minimal constitutional standards and is "judged by practical rather than technical considerations."[5] It is generally sufficient if it tracks the statute when the statute lists all the elements of the offense.[6]

"Though it may provide more information, a bill of particulars is not intended to serve as a discovery device or to compel the government's disclosure of the factual proof planned for trial. Nor is it a way to require the government's explanation of the legal theories expected at trial."[7] "The defendant is not entitled to notice of all evidence that the government may have, but only the theory of the government's case."[8] The District Court of Kansas previously concluded, therefore, that "the government's failure to identify all possible coconspirators, aiders and abettors in the indictment" was not per se prejudicial to the defendant.[9]

"The court's main concern when reviewing such a motion is whether the defendant has: (1) a meaningful opportunity to prepare his or her defense, (2) assurances against unfair surprise

---

[4] *United States v. Villota-Gomez*, 994 F. Supp. 1322, 1335 (D. Kan. 1998) (quoting *United States v. Dunn*, 841 F.2d 1026, 1029 (10th Cir. 1988) (quoting *United States v. Cole*, 755 F.2d 748, 760 (11th Cir. 1985))).

[5] *Id.* (internal quotations omitted) (citing *Edmonson*, 962 F.2d at 1541).

[6] *Id.* (citing *Dunn*, 841 F.2d at 1029).

[7] *Id.* (citing *Dunn*, 841 F.2d at 1029 and citing *United States v. Gabriel*, 715 F.2d 1447, 1449 (10th Cir. 1983)).

[8] *United States v. Isch*, No. CR-09-040-D, 2009 WL 2409578, at *3 (W.D. Okla. Aug. 3, 2009) (citing *Dunn*, 841 F.2d at 1030).

[9] *Villota-Gomez*, 994 F. Supp. at 1335 n.9 (citing *United States v. Hughes*, 817 F.2d 268, 272 (5th Cir. 1987)); *United States v. Cooper*, 283 F. Supp. 2d 1215, 1239 (D. Kan. 2003) ("The government is not obligated to provide information on unindicted co-conspirators.").

to the defendant at trial, and (3) protection from double jeopardy dangers."[10] "Unless the request for the bill of particulars shows, on its face, that failure to grant the request would result in" a violation of one of the above-three protections, "defendant has the burden of showing [by brief, affidavit or otherwise] that his or her request meets one of the three criteria."[11]

### B. *Discovery Regarding Confidential Informants*

The law regarding the disclosure of the identities of confidential informants is well-established. The government has the privilege to withhold the identity of informants in order to encourage "citizens to communicate their knowledge of the commission of crimes to law-enforcement officials."[12] However, this privilege is not limitless. The Supreme Court has directed trial courts to balance "the public interest in protecting the flow of information necessary for effective law enforcement against the defendant's right to prepare his defense."[13] Whether disclosure is warranted depends on several factors, including "the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, [and] the possible significance of the informer's testimony."[14]

The Tenth Circuit has placed cases involving confidential informants into three categories:

> At one extreme are the cases where the informant is a mere tipster, and disclosure is not required. At the other extreme are cases such

---

[10]*United States v. Franklin*, No. 06-20176-JWL, 2007 WL 2155664, at *1 (D. Kan. July 24, 2007) (citing *United States v. Anderson*, 31 F. Supp. 2d 933, 938 (D. Kan. 1998)).

[11]*Cooper*, 283 F. Supp. 2d at 1239.

[12]*Roviaro v. United States*, 353 U.S. 53, 59 (1957).

[13]*United States v. Lujan*, 530 F. Supp. 2d 1224, 1262–63 (D. N.M. 2008) (citing *Roviaro*, 353 U.S. at 62).

[14]*Roviaro,* 353 U.S. at 62.

6

> as *Roviaro* [*v. United States*,] itself where the informant has played a crucial role in the alleged criminal transaction, and disclosure and production of the informant are required to ensure a fair trial. In addition, there are cases where there is a slight possibility a defendant might benefit from disclosure, but the government has demonstrated a compelling need to protect its informant.[15]

If the informant's identity and the contents of his communications are "relevant and helpful to the defense of an accused, or essential to a fair determination of a cause, the privilege must give way."[16] In addition, the privilege is waived when the informant's identity and communications have already been revealed to those who would resent the communication.[17] However, if the informant neither participated in the crime nor witnessed it take place, disclosure is unwarranted.[18] "Nor must the government supply the defendant with information about an informer when the individual introduced suspected traffickers to narcotics agents."[19] A defendant seeking disclosure bears the burden of proving a need for the information.[20] Mere speculation that an informant might be relevant in some capacity is insufficient to meet this burden.[21]

With regard to other information that might be used to impeach a key witness, those

---

[15]*United States v. Martinez*, 979 F.2d 1424, 1426 (10th Cir.1992) (quoting *United States v. Moralez,* 908 F.2d 565, 568 (10th Cir.1990)).

[16]*Roviaro*, 353 U.S. at 60–61.

[17]*Id.* at 59.

[18]*United States v. Brantley,* 986 F.2d 379, 383 (10th Cir.1993).

[19]*Id.* (citing *United States v. Ortiz*, 804 F.2d 1161, 1166 (10th Cir. 1986)).

[20]*Martinez*, 979 F.2d at 1426.

[21]*Id.* at 1428.

requests are largely governed by *Brady v. Maryland*.[22]  The District of Kansas summarized:

> In *Brady*, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  The obligation of disclosure encompasses not only exculpatory evidence, but also evidence that may be used to impeach the Government's witnesses by showing bias or interest. *United States v. Bagley*, 473 U.S. 667, 676 (1985).  *See Giglio v. United States*, 405 U.S. 150 (1972).  "The government shall construe liberally any requests for *Brady* material and resolve all doubts in favor of disclosure." *United States v. Diggs*, 801 F. Supp. 441 (D. Kan. 1992).[23]

**III.   Discussion**

   *A.   Bill of Particulars*

Pursuant to Fed. R. Crim. P. 7(f),[24] defendants request a bill of particulars regarding Count 1 of the Indictment, requesting the "particular quantity of drugs" they are alleged to have possessed with intent to distribute.  In addition, defendants are concerned the government's discovery suggests there is "additional relevant conduct to be considered" that the government has not quantified, which may affect the "range of possible penalties."  They want "fair notice" of (1) the quantity charged in the present case, and (2) any relevant incidents known to the government that may be relevant to trial and may affect potential penalties.  Defendants argue that a bill of particulars should allow them to determine the names of unindicted aiders and abettors whom the government plans to use as witnesses, and to know the substance, time, place and date associated with the other conduct, including quantities.

---

[22] 373 U.S. 83 (1963).

[23] *United States v. Torres*, Nos. 93-40003-01-SAC to 93-40003-09-SAC, 1993 WL 463413, at *13 (D. Kan. Oct. 8, 1993).

[24] Fed. R. Crim. P. 7(f) provides: "The court may direct the government to file a bill of particulars. . . . The government may amend a bill of particulars subject to such conditions as justice requires."

8

In its response, the government clarified that the defendants are charged with possessing with intent to distribute 55.20 grams (net weight) of methamphetamine with a purity level of 99%. Having provided this information, the government alleges defendant's motion is moot.

In support of their motion for information about "aiders and abettors," defendants cite to *United States v. Rogers*.[25] However, the Court finds this case inapplicable. In *Rogers*, the defendant was charged with mail fraud, racketeering, fraudulent interstate transactions, aiding and filing of false or fraudulent tax returns, conspiracy to obstruct justice, subornation of perjury, and perjury. Because of these complicated charges, defendants' request for information relating to aiders and abetters was directly relevant to the changes against them. By contrast, Count 1 is simple and straight forward: defendants are charged with possessing methamphetamine with the intent to distribute. This is not a complex charge involving conspiracy or aiding and abetting.

The Indictment and Superseding Indictment set forward the elements of the crimes charged and the government has specified the amount of drugs that defendants are alleged to have possessed. Therefore, the Court finds a bill of particulars is not necessary in this case. It is unclear to this Court whether defendants' request for information on "relevant incidents" is an evidentiary request in preparation for trial or for sentencing. Defendants have not shown how "relevant incidents" affect their preparation for trial in light of the charges that have been brought.

Defendants bear the burden of showing that the evidence they seek is necessary to prepare their defenses, to avoid surprise at trial, or to protect them from double jeopardy in the

---

[25] 617 F. Supp. 1024 (D. Colo. 1985).

9

event of a later prosecution for the same offense.[26] Defendants' motion does not appear to fall within the three protections offered by a bill of particulars. The Indictment and Superseding Indictment, in combination with the facts provided in the government's response brief, state the essential elements of the statutory charges in this case. Defendants appear to be fishing for evidence relating to the narcotics surveillance that took place prior to the traffic stop. However, the Court finds that the charges in this case relate to evidence found in a vehicle occupied by the defendants on December 15, 2008. To the extent defendants are seeking discovery beyond the scope of the charges brought in this case, they have not borne the burden of showing how it relates to the charges they are currently facing.[27] Because defendants have made an inadequate showing of prejudice under these circumstances, their motion for bill of particulars is denied.

### B. *Discovery Regarding Confidential Informants*

Defendants request disclosure of the following information for all informants relied upon by the government in this case: (1) full name and address; (2) any prior record, including felonies and misdemeanors; (3) any promised immunities or agreements and all other evidence affecting bias or credibility (including psychiatric treatment or drug addiction); (4) any payments or other consideration given; (5) production of the informants for a pretrial interview with defense counsel; (6) any recorded memorandum of communication between the informants and government agents; (7) any polygraph examination performed and the results; and (8) any work by the informants on other cases and benefits received. Defendants believe law enforcement

---

[26]*United States v. Franklin*, No. 06-20176-JWL, 2007 WL 2155664, at *1 (D. Kan. July 24, 2007).

[27]*See United States v. Villota-Gomez*, 994 F. Supp. 1322, 1336 (D. Kan. 1998) (denying motion for bill of particulars when defendants "appear[] to be fishing for information regarding another, ongoing criminal investigation.").

may have received information from informants alleging defendants were involved in the drug trade, which led to the subsequent surveillance and traffic stop. If defendants are convicted, they believe there is a possibility the information provided by these unknown persons will be used in determining their sentence. Finally, defendants extend this discovery request to all informants who might be called by the government as witnesses during trial.

The government notes that certain unidentified individuals formed the basis of a search warrant for the home of Garrett Greer, and were mentioned in a case synopsis by one of its lead investigators on the case. The government, therefore, identifies four confidential informants and one "concerned citizen" who may be the subject of defendants' motion. The government identifies them as: CI #2, CI #3, CI 07-24, CI KBI, and CC1. The government briefly described each individual, and the Court summarizes it as follows:

> **CI #2** – He/She requested anonymity because CI #2 was threatened by those he/she informed on. Thus, the government believes there is a compelling need for CI #2 to remain anonymous. He/she advised he/she was dealing drugs for both defendants and had intimate knowledge of the inner workings of defendants' allegedly extensive drug organization. CI #2 was neither a participant nor a witness/passenger on December 15, 2008 when defendants' vehicle was stopped.
>
> **CI #3** – The government argues CI #3 was a tipster, as he/she was incarcerated and provided information about Garrett Greer, specifically that Greer was being supplied methamphetamine by a Mexican. CI #3 saw Greer with an individual CI #3 later identified as Beltran-Palafox. CI#3's information largely related to Greer. The government believes this informant's testimony would not be relevant to the present case. CI #3 did not participate in the illegal transaction that formed the basis of the indictment, nor was he/she a participant or witness at the vehicle stop.
>
> **CI 07-24** – He/She gave information about Greer, and only Greer. He/She did not mention either defendant in the information provided to law enforcement. Thus, CI 07-24 is not "relevant and

11

> helpful" to defendants' defense.
>
> **CI KBI** – He/She gave information about Greer, stating in part that Greer's main supplier was a Hispanic male known as "Lordy." He/She identified a photograph of Beltran-Palafox as "Lordy." He/She was not a witness to the stop of the vehicle nor a participant/passenger in the vehicle. Therefore, the government argues that he/she was only a tipster.
>
> **CC1** – He/She was a worker performing a job in and around Beltran-Palafox's home on or about September 10, 2008. The government considers him/her a classic "tipster."[28]

Here, Count 1 of the Superseding Indictment charges both defendants with knowingly and intentionally possessing, with intent to distribute, fifty (50) grams or more of methamphetamine; Count 2 charges defendant Beltran-Palafox with knowingly and intentionally carrying a firearm in relation to a drug trafficking crime. Upon the Court's review of the informants identified by the government, it finds that none actively participated in or witnessed the traffic stop, which generated the charges in this case, nor the events immediately preceding it at the house of Garrett Greer.[29] Although the informants may have given information that led to the police surveillance of the house where defendants were seen prior to the traffic stop, defendants have neither shown nor argued that evidence surrounding the *narcotics surveillance* is necessary to prepare any particular defense related to the charges in *this* case. At most, the Court finds that the informants served as tipsters in this case, and therefore disclosure is unwarranted. CC1 appears to be no more than a concerned citizen, which the government has no

---

[28]*See* Doc. 43 at 7–9.

[29]*See United States v. Holmes*, 311 F. App'x 156, 162 (10th Cir. 2009) ("[W]e have consistently held that where the informer was not a participant in the illegal transaction, no disclosure is required."); *United States v. Brantley*, 986 F.2d 379, 383 (10th Cir. 1993) ("Where, as here, the informant was not a participant or witness to the crime, this court has consistently held that the identity need not be disclosed.").

duty to disclose.[30]  Even assuming there were a slight possibility that defendants might benefit from disclosure of CI #2's identity, defendants have not identified what that benefit might be, and the government has shown there is a compelling need to protect his/her identity.[31]

To the extent defendants are seeking the identities of confidential informants in order to challenge the initial stop of their Lincoln Town Car by Officer Garcia, the Court finds this is not an appropriate purpose.  Before stopping a vehicle, an officer need only have "an objectively reasonable articulable suspicion" to believe a violation of any "applicable traffic or equipment regulation[]" has occurred or is occurring.[32]  The Supreme Court has held that the subjective motives of the officer, and the practices of his department, are irrelevant in deciding whether a particular stop is reasonable.[33]  Thus, "information about the CI (who provided information which may have focused the officer's attention on [defendants'] truck) is irrelevant for purposes of evaluating [defendants'] motion[s] to suppress."[34]  This is so because Officer Garcia ostensibly stopped the Lincoln Town Car because he believed the window tinting violated Kansas law.  It is irrelevant that the officer may have had other subjective motives for stopping the vehicle.  The Court will determine the lawfulness of the traffic stop when it rules on defendants' motions to suppress.

---

[30]*See United States v. Wynne*, 993 F.2d 760, 766 (10th Cir. 1993).

[31]*See United States v. Moralez*, 908 F.2d 565, 568 (10th Cir. 1990) (citing *United States v. Fischer*, 531 F.2d 783, 787 (5th Cir. 1976)).

[32]*United States v. DeGasso*, 369 F.3d 1139, 1143 (10th Cir. 2004) (quoting *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995) (en banc)); *United States v. Cervine*, 347 F.3d 865, 869 (10th Cir. 2003); *United States v. Soto*, 988 F.2d 1548, 1554 (10th Cir. 1993).

[33]*Whren v. United States*, 517 U.S. 806, 815 (1996).

[34]*United States v. D'Armond*, 65 F. Supp. 2d 1189, 1999 (D. Kan. 1999) (denying defendant's *Roviaro* request for confidential informants' identities for the purpose of challenging the initial traffic stop).

13

Defendants bear the burden of "com[ing] forward with evidence establishing that the *Roviaro* criteria favor disclosure,"[35] and must "present more than mere speculation about the possible usefulness of an informant's testimony."[36] "[D]efendant must explain to the court as precisely as possible what testimony he thinks the informer could give and how this testimony would be relevant to the material issue of guilt or innocence."[37] "The government is not required to supply information about an informer to a defendant when the informer merely provides the initial introduction."[38] In fact, the Tenth Circuit has "refused disclosure in similar cases where the informant has limited information, was not present during commission of the offense, and cannot provide any evidence that is not cumulative or exculpatory."[39] "To permit the trial court to make the required balancing test, . . . an *in camera* hearing can be used to determine whether the informant's testimony would lend aid to the defense."[40]

Defendants have not borne their burden in this case. The charges are limited to possession of methamphetamine with intent to distribute and possession of a firearm, which were discovered during a traffic stop and defendants' subsequent arrests. If defendants believe the confidential informants have information relevant or helpful to their defense, they have not

---

[35] *United States v. Torres*, Nos. 93-40003-01-SAC to 93-40003-09-SAC, 1993 WL 463413, at *13 (D. Kan. Oct. 8, 1993).

[36] *Moralez*, 908 F.2d at 567 (citing *United States v. Zamora*, 784 F.2d 1025, 1030 (10th Cir. 1986)).

[37] *Torres*, 1993 WL 463413, at *13.

[38] *United States v. Holmes*, 311 F. App'x 156, 162 (10th Cir. 2009) (citing *United States v. Reardon*, 787 F.2d 512, 517 (10th Cir. 1986)).

[39] *United States v. Gordon*, 173 F.3d 761, 767–68 (10th Cir. 1999) (citations omitted).

[40] *United States v. Martinez*, 979 F.2d 1424, 1426 (10th Cir. 1992); *see Moralez*, 908 F.2d at 568–68 (holding that the record was inadequate to determine if the government's alleged tipster-informant witnessed any preparations leading up to the drug transaction, and directing the district court to hold an *in camera* hearing).

informed the Court of what those defenses might be. In fact, the only matter for which defendants specifically argue disclosure is relevant, is sentencing. However, the Court does not consider compulsory disclosure of confidential informants' identities solely for the purposes of preparing for sentencing to be appropriate at this juncture in the case. Therefore, having failed to meet their burden of showing, beyond mere speculative possibility, that the information they request is relevant or necessary to their defense or to a fair determination of this case, the Court finds that defendants' motion to compel disclosure should be denied.[41]

Nevertheless, the Court reminds the government that the Court's ruling on defendants' motion to compel disclosure of non-testifying confidential informants in no way abrogates the government's obligations under *Brady* and *Giglio*, especially as they relate to any informants the government intends to call as witnesses at trial.[42]

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' motions to join (Docs. 37, 41) are **granted.**

**IT IS FURTHER ORDERED BY THE COURT** that defendants' Motion for Bill of Particulars (Doc. 35), and defendants' Motion to Compel Discovery Regarding Informants (Doc. 36) are hereby **denied.**

---

[41]*United States v. Gordon*, 173 F.3d 761, 768 (10th Cir. 1999) ("We will not require disclosure of an informant's identity based on 'mere speculation'; the informant's testimony must be shown to be valuable to the defendant.") (citing *United States v. Leahy*, 47 F.3d 396, 398 (10th Cir. 1995)).

[42]*See United States v. Lujan*, 530 F. Supp. 2d 1224, 1263 (D. N.M. 2008) (denying defendants' motion to compel disclosure of confidential informants, but reminding the government of its obligations under *Brady* and *Giglio*); *United States v. Ridley*, 814 F. Supp. 992, 998 (D. Kan. 1993) ("[E]xcept for their rights and the government's obligations under these rules and *Brady*, the defendants have no 'generalized affirmative right' under *Roviaro* to discover the informant's statements. *U.S. v. Saa*, 859 F.2d 1067, 1075 (2nd Cir. 1988). The defendants' motion is denied except for the government's duty to provide *Brady* material relating to the informant as a potential defense witness."); *see also Smith v. Illinois*, 390 U.S. 129, 132–33 (1968) (holding that if an informant is called as a key government witness, he or she must be willing to disclose his or her name and address, especially when credibility will be a key issue).

**IT IS SO ORDERED.**

Dated: March 31, 2010

                                                   S/ Julie A. Robinson  
                                                  JULIE A. ROBINSON  
                                                  UNITED STATES DISTRICT JUDGE